IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

OHIO SECURITY INSURANCE          *
COMPANY,                         *
                                 *
        Plaintiff,               *
                                 *
              v.                 *        CV 114-125
                                 *
JOSHUA A. NEWSOME; KODIAK        *
EQUIPMENT, INC.; RAPID PREP,     *
LLC; GAYNOR NEWSOME; V'DOLA      *
GROVENSTEIN; LOWELL              *
GROVENSTEIN, SR.; LOWELL         *
GROVENSTEIN, JR.; and the        *
HERTZ CORPORATION,               *
                                 *
        Defendants.              *

---

## O R D E R

---

This matter comes before the Court on two motions to
intervene by Defendant Rapid Prep, LLC's ("Rapid Prep") primary
and excess insurance carriers, Hartford Fire Insurance Company
("Hartford") and Great American Insurance Company ("Great
American") (collectively, "the Movants"). (Docs. 12, 48.) For
the reasons stated herein, the Movants' motions are **GRANTED**.


## I.    BACKGROUND

The Movants here seek to intervene in Ohio Security
Insurance Company's ("Ohio Security") declaratory judgment
action, which addresses an insurance dispute over a car accident

in McDuffie County, Georgia. (Compl., Doc. 1, ¶ 33.) With the declaratory judgment action, Ohio Security seeks declaration of what, if any, insurance coverage it owes to its insured, Kodiak Equipment, Inc. ("Kodiak"). Ohio Security alleges, *inter alia*, that it does not owe coverage because Joshua Newsome ("Newsome") was not working in the course and scope of business with Kodiak at the time of the accident, but rather was conducting business for himself and Rapid Prep at that time. The Movants, on the other hand, claim that Newsome was not working on behalf of their insured — Rapid Prep — at the time of the accident. Accordingly, Newsome's employment status is of particular importance to both the declaratory judgment action and the present motions to intervene, and the Court briefly reviews those facts now.[1]

## A.   Defendant Newsome's Trip to Georgia and Employment Status

On April 29, 2013, Newsome traveled from Washington to Georgia. (Compl. ¶ 33; Newsome Dep., Doc. 39 Ex. C, at 70.) According to Newsome, his trip to Georgia served at least two purposes. (See Newsome Dep. at 21, 72.) For one, Newsome regularly traveled to Thomson, Georgia to see his doctor and renew his prescriptions, which he did on the morning of the

---

[1]    Given the infancy of this litigation and the limited record, for the purpose of the present motions the Court relies heavily on Newsome's deposition for its understanding of the facts.

accident. (Id. at 21, 79-80.) Additionally, Newsome claims to have been assessing future business opportunities for his employers, Kodiak and Rapid Prep, both of which were involved in the rental of large equipment. (Id. at 145-46.)

Because Newsome was employed by Kodiak and Rapid Prep at the time of the accident, a brief review of the interplay between the two companies is necessary. At all times relevant to the accident, Newsome was the sole owner and president of Kodiak. (Id. at 55-56.) Following some financial difficulties at Kodiak that arose well before the accident,[2] Newsome contacted Rapid Prep to set up an arrangement whereby Rapid Prep would take over Kodiak's territory in the Northwest. (Id. at 61-63.) All of Kodiak's employees — including Newsome — thereafter became Rapid Prep employees. (Id. at 63-64.) Kodiak, with Newsome as its sole employee, remained in operation until late 2013, when it dissolved. (Id. at 65.)

When Newsome decided to make the trip to Georgia, he informed Chris McNamara, co-owner of Rapid Prep, of his plans and McNamara neither prohibited nor affirmatively endorsed the trip. (Id. at 113-14.) At all times leading up to the accident

---

[2] Specifically, a dispute arose between Newsome, who then held forty percent ownership in Kodiak, and his partner, Steven Danzig, regarding the non-payment of payroll taxes. (Newsome Dep. at 55.) As a means to resolve the conflict, Newsome became the sole owner of Kodiak. (Id. at 56.) However, following payment to the IRS, Kodiak owed a substantial debt to some of its suppliers. (Id. at 61-62.) After Newsome contacted Chris McNamara, co-owner of Rapid Prep, Rapid Prep agreed to take over Kodiak's Northwest territory, including the Kodiak employees and contracts. (Id. at 63-64.)

it was Newsome's understanding that he was in Georgia to investigate business opportunities for both companies. (See id. at 149.)

For the trip, Newsome purchased the plane tickets with his corporate Rapid Prep credit card. (Id. at 116.) Then upon his arrival in Atlanta, Georgia, Newsome rented a car from Hertz, which he paid for with his personal credit card, and drove to Augusta, Georgia. (Id. at 79, 122.) When Newsome arrived in the Augusta area, he picked up his father from his childhood home, drove to the doctor, and then to the pharmacy to refill his prescriptions. (Id. at 79-80.) After he went to the pharmacy, Newsome stopped at a local Office Depot to purchase a printer and computer monitor to use for business purposes. (Id. at 83-85.) He then went to lunch and the grocery store, still with his father in tow. (Id. at 80.) It was during these errands that the accident with the Grovensteins occurred. (Compl. ¶ 35; Newsome Answer, Doc. 17, ¶ 35.) According to Newsome, he fell asleep at the wheel, went through a stop sign, and hit the Grovensteins' vehicle. (Doc. 39, Ex. F.) As a result of the accident, Newsome was charged with running a stop sign and driving under the influence ("DUI").[3] (Id.) On the

---

[3] Newsome claims to have been charged with DUI because there was prescription medicine in the car, but he expected that charge to be dismissed pending the results of his blood test. (Doc. 39, Ex. F at 2.) He does not dispute, however, that he took prescription medication the morning of the accident. (Newsome Dep. at 131.)

4

Friday following the accident, McNamara fired Newsome[4] and informed him that Rapid Prep was uninterested in expanding into Georgia. (Newsome Dep. at 134, 140.)

Each of Rapid Prep's insurers — Hartford[5] and Great American — allege that following the accident the Grovensteins made demands for the policy limits.. (Doc. 28, Ex. 3 at 5; Doc. 49, Ex. 1 at 5.) Thereafter, the Grovensteins filed suit in this Court for damages on February 7, 2014, which was dismissed for lack of subject matter jurisdiction on May 19, 2014. (Grovenstein et al. v. Newsome et al., No. 1:14-cv-00042, Doc. 1 (S.D. Ga. Feb. 7, 2014); Id. at Doc. 38 (S.D. Ga. May 19, 2014).) The Grovensteins then re-filed in the Superior Court of Glascock County on June 3, 2014, specifically alleging that Newsome was acting within the course and scope of his employment with both Kodiak and Rapid Prep at the time of the accident. (Doc. 49, Ex. 1.) The Grovensteins have since settled their claims against Newsome, Kodiak, Rapid Prep, and the insurers, and the Glascock County action will be dismissed with prejudice.

---

[4] Newsome contends that the reason for his split from Rapid Prep was that McNamara "didn't want this on his insurance. He didn't want their insurance rates raised." (Newsome Dep. at 140-41.)

[5] Hartford sent two letters to the Grovensteins' counsel (Doc. 39, Exs. A-B) and Newsome (Doc. 38, Exs. A-B) dated July 9, 2013 and October 9, 2013, stating that the accident was not covered by the Hartford policy. Hartford sent a third letter to Newsome on February 12, 2014, after the filing of the damages suit in district court, reiterating the same. (Doc. 38, Ex. D.) On August 12, 2014, roughly two months after the Grovensteins' complaint was filed in Superior Court, Hartford sent a fourth letter to Newsome to inform him that it would provide him with a defense subject to a reservation of rights agreement, which Newsome has not signed. (Doc. 43, Ex. A.)

(Doc. 64.) On March 26, 2015, the Grovenstein defendants were dismissed from this action. (Doc. 74.)

## B. The Declaratory Judgment Action

On May 29, 2014, Ohio Security filed this action seeking a declaration that it has no duty to defend or provide coverage to Kodiak or Newsome because (1) Kodiak and Newsome were uncooperative in failing to provide documents relating to the accident and the purpose of the trip to Georgia (Compl. ¶¶ 82, 85); (2) Newsome was not an "insured" under the policy at the time of the accident because he was not acting in the course and scope of Kodiak's business (Id. ¶¶ 92-94); and (3) Newsome engaged in fraud by knowingly supplying false information[6] to Ohio Security regarding the accident and the purpose of his trip to Georgia (Id. ¶¶ 100, 105). Ohio Security additionally asks this Court to declare the policy void *ab initio* and award interest, attorney fees, and costs in its favor because Newsome's alleged misrepresentations, fraud, and false swearing constitute a breach of the "Concealment, Misrepresentation Or Fraud" provision in the insurance policy. (Id. ¶¶ 106-10.)

---

[6] On June 24, 2013, Newsome gave a statement to Hartford, in which he stated the purpose of his trip to Georgia was to set up an office for Rapid Prep. (Compl. ¶ 102.) Based on this recorded statement, Ohio Security alleges that "Newsome's representations to Ohio Security that he was conducting business for Kodiak at the time of the Accident were false." (Id. ¶ 100.)

On August 13, 2014, Hartford filed its motion to intervene, to which the Grovensteins, Newsome, Kodiak, and Hertz all objected. Thereafter, Rapid Prep's excess insurer, Great American, filed its own motion to intervene, which garnered the same objections. Given the substantial overlap between the two motions to intervene — and particularly the identical nature of the Movants' interests — the Court addresses them concurrently.

## II.  <u>DISCUSSION</u>

The Movants each seek to intervene in the present action either as a matter of right or permissively pursuant to Federal Rule of Civil Procedure 24. Many of the Defendants in this declaratory judgment action object, focusing heavily on the Movants' standing to raise such a claim. Thus, before delving into the merits of the motion to intervene, the Court addresses the standing concerns.

### A.  Standing

The Declaratory Judgment Act provides that "[i]n a case of actual controversy within its jurisdiction, . . . any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

This "controversy" must be more than mere conjecture and must "touch the legal relations of parties having adverse legal interests." Atlanta Gas Light Co. v. Aetna Cas. & Sur. Co., 68 F.3d 409, 414 (11th Cir. 1995) (internal quotation and alteration omitted). "Whether such a controversy exists is determined on a case-by-case basis and by the totality of the circumstances." Am. Ins. Co. v. Evercare Co., 699 F. Supp. 2d 1355, 1358 (N.D. Ga. 2010) (internal quotations omitted). In determining whether a plaintiff has met its burden of establishing the requisite controversy, courts must "look to the state of affairs as of the filing of the complaint; a justiciable controversy must have existed at that time." Atlanta Gas Light, 68 F.3d at 414. Here, no complaint has been filed; rather, Hartford and Great American simply request the opportunity to do so.

Even so, Defendants expend a substantial portion of their briefs challenging Hartford's and Great American's standing to bring a declaratory judgment action. As best the Court can discern, Defendants make two arguments with respect to the Movants' standing to bring a declaratory judgment action.

First, they allege that the Movants' prior denial of coverage forecloses any actual controversy. Defendants rely on two Georgia cases for the proposition that the Movants cannot now seek a declaration of rights because they already

8

unequivocally denied coverage.[7]  In these two Georgia cases, the Georgia Supreme Court and Georgia Court of Appeals held that an insurer cannot deny coverage and thereafter bring a declaratory judgment action to validate that decision.  There, the courts held that a live controversy did not exist because there were no remaining rights to be resolved.[8]

In contrast, a number of cases from federal courts of this state have held that insurers seeking to bring declaratory judgment actions following an initial denial of coverage do, in fact, have standing.  For example, in Evercare, the district court held that "the possibility or conjecture of a future lawsuit created by [an insurer's] refusal [to provide coverage] is sufficient to establish a controversy of threatened injury." Evercare, 699 F. Supp. 2d at 1359 (internal quotations and alterations omitted).

Here, there is clearly the potential for a future lawsuit if the Movants fail to provide coverage.  Indeed, Newsome's response brief recognizes that the Movants' refusal to defend

---

[7]     Drawdy v. Direct General Ins. Co., 586 S.E.2d 228 (Ga. 2003); Empire Fire & Marine Ins. Co. v. Metro Courier Corp., 507 S.E.2d 525 (Ga. Ct. App. 1998).

[8]     These cases, although persuasive, can be distinguished on their facts. Drawdy, for example, involved an insurer who never agreed to provide a defense pursuant to a reservation of rights, but rather unequivocally denied coverage and thereafter brought a declaratory judgment action.  Drawdy, 586 S.E.2d at 229-31.  Further, the underlying damages suit in Empire Fire was entirely resolved unlike the case at bar.  Empire Fire, 507 S.E.2d at 528. That is, all claims were adjudicated in arbitration leaving no further litigation pending.  Id.  Here, while the Grovensteins have settled their claims, another damage suit is possible from Newsome's father, Gaynor Newsome.

"will entitle Defendant Newsome to seek damages for that failure" (Doc. 38 at 5; Doc. 51 at 9), and Hartford and Great American could each face indemnity claims following judgment in a tort action, should one be filed (Doc. 51 at 10). See Evercare, 699 F. Supp. 2d at 1359 ("[T]he purpose of declaratory judgment actions is to resolve outstanding controversies without forcing a putative defendant to wait and see if it will be subjected to suit.") (internal quotations and alterations omitted); see also State Farm Mut. Auto Ins. Co. v. Bates, 542 F. Supp. 807, 817 (N.D. Ga. 1982) ("Federal courts long have held that an insurance company seeking determination of its liabilities under an insurance contract could utilize the Declaratory Judgment Act for such a purpose."). Indeed, as was the case in Evercare, "[a] declaratory judgment would equally address [Defendants'] ongoing demand that [Movants'] perform under the policies[.]" See id.

This Court is thus faced with a conflict between holdings of Georgia courts and federal courts within Georgia. However, "[t]he federal Declaratory Judgment Act involves procedural remedies only, not substantive rights, providing a federal plaintiff with a procedural alternative for judicial relief. Thus, although this case is before the Court because of diversity jurisdiction, any Erie-mandated concerns are inapplicable insofar as they relate to whether the Court may

10

entertain [the Movants'] claims." <u>Bates</u>, 542 F. Supp. at 817 (internal citations omitted). This Court thus follows the established case law of other district courts in this state and holds that the Movants' prior denials of coverage do not preclude an actual case or controversy.

Defendants next allege that no controversy exists because, based on the face of the Grovensteins' complaint[9] alone, the Movants owed a duty to defend. As the Court understands this argument, Defendants allege that because the Movants owe a duty to defend and any underlying tort suit will address "any disputed issue of respondeat superior," there is no live controversy to be addressed by this Court that will not already be addressed in the state courts. In that regard, Defendants argue that because the duty to defend arose immediately upon the filing of the Grovensteins' complaint, there is no "controversy" for this Court to decide in terms of whether the Movants owe a defense to their insured.

As noted above, "[f]ederal courts long have held that an insurance company seeking determination of its liabilities under an insurance contract could utilize the Declaratory Judgment Act for that purpose." <u>Bates</u>, 542 F. Supp. at 817; <u>see</u> <u>also</u> <u>Coregis</u> <u>Ins. Co. v. McCollum</u>, 955 F. Supp. 120, 124 (M.D. Fla. 1997) ("The underlying state court action will not fully resolve this

---

[9] As detailed above, the Grovensteins have since dismissed the underlying lawsuit following settlement.

11

controversy. Before Plaintiff incurs large expense in defending the state action, or before it admits liability under the policy, Plaintiff has a right to know whether it is bound under its contract to defend its insured and whether or not it would be liable under the coverage of its policy in the event the state court renders a judgment against it.").

Thus, any argument that the underlying litigation will resolve whether Newsome was acting within the course and scope of his employment is unavailing. Based on the above, the Court finds that an actual controversy does exist, notwithstanding the Movants' prior denials of coverage.


## B. Motion to Intervene

A party wishing to intervene may do so through one of two avenues: intervention as of right and intervention with permission of the court. Intervention as of right, which is covered by Federal Rule of Civil Procedure 24(a), requires the court to

> permit anyone to intervene who [] claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

FED. R. CIV. P. 24(a)(2). Specifically, a party seeking to intervene as a matter of right must show:

> (1) his application to intervene is timely; (2) he has
> an interest relating to the property or transaction
> which is the subject of the action; (3) he is so
> situated that disposition of the action, as a
> practical matter, may impede or impair his ability to
> protect that interest; and (4) his interest is
> represented inadequately by the existing parties to
> the suit.

Stone v. First Union Corp., 371 F.3d 1305, 1308-09 (11th Cir.

2004) (quoting Worlds v. Dep't of Health & Rehabilitative

Servs., 929 F.2d 591, 593 (11th Cir. 1991)).

Additionally, Rule 24(b) provides that "[o]n timely motion,

the court may permit any one to intervene who . . . has a claim

or defense that shares with the main action a common question of

law or fact." FED. R. CIV. P. 24(b). When there is no right to

intervene under Rule 24(a), it is wholly within the Court's

discretion to allow permissive intervention under Rule 24(b).

Worlds, 929 F.2d at 595. The Federal Rules instruct only that

the Court must "consider whether the intervention will unduly

delay or prejudice the adjudication of the original parties'

rights." FED. R. CIV. P. 24(b)(3).

Here, both Hartford and Great American contend that they

should be permitted to intervene in this declaratory judgment

action by right pursuant to Rule 24(a) or, in the alternative,

permissively pursuant to Rule 24(b). Because the Court finds

that permissive intervention is appropriate under the

circumstances, it only discusses its reasoning under that section.[10]

### 1. Timely Motion

Whether a motion to intervene is timely depends on four factors:

> 1) the length of time during which the proposed intervenor knew or reasonably should have known of its interest in the case before it petitioned for leave to intervene; 2) the degree of prejudice to the existing parties as a result of the proposed intervenor's failure to move to intervene as soon as it knew or reasonably should have known of its interest; 3) the extent of prejudice to the proposed intervenor if its position is denied; 4) the presence of unusual circumstances militating either for or against a determination that the application is timely.

Lancer Ins. Co. v. Hitts, No. 5:09-cv-302, 2010 WL 2867836, *3 (M.D. Ga. July 20, 2010). "The question whether an application for intervention is timely is largely committed to the district court's discretion[.]" Reeves v. Wilkes, 754 F.2d 965, 968 (11th Cir. 1985). "Furthermore, timeliness is not a word of exactitude or of precisely measurable dimensions. The

---

[10]   Seemingly in response to the second prong of the intervention as of right test, Defendants provide considerable argument that the Movants do not have an interest that will be helped or harmed by this Court's ruling. More specifically, Defendants claim that the present declaratory judgment action addresses only whether Newsome was acting in the course and scope of his business with Kodiak, and it is irrelevant whether he was working for Rapid Prep in addition to or instead of Kodiak. However, as will be developed in more detail below, to satisfy the permissive intervention test, the Movants need only show a timely motion, common questions of law or fact, and a lack of any resulting prejudice. The Movants need not show an interest in the pending litigation that will be impaired if not permitted to intervene. Thus, the Court need not address the merits of Defendants' assertions.

14

requirement of timeliness must have accommodating flexibility toward both the court and the litigants if it is to be successfully employed to regulate intervention in the interest of justice." Office Depot, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, Pa., No. 09-80554-CIV, 2010 WL 431886, *2 (S.D. Fla. Feb. 3, 2010) (internal quotations omitted).

Addressing the first factor, the Movants admittedly knew of their interest months before filing their motions to intervene. Specifically, the Grovensteins initiated the underlying litigation in February 2014 and Hartford took Newsome's statement in June 2013. The motions to intervene were not filed until August and September 2014. Even considering the fact that the Grovensteins' claims, which have since settled, proceeded through discovery, the Court does not find the several month delay sufficient to consider the motions untimely. Indeed, courts have routinely found that a several month delay does not render a motion to intervene "untimely." Compare Lancer, 2010 WL 2867836, at *3 (finding a motion to intervene timely where the movant filed its motion "shortly after having become aware of the declaratory action and immediately following" the plaintiff's motion for summary judgment, which was not yet ripe for the court's review) and Diaz v. S. Drilling Corp., 427 F.2d 1118, 1125-26 (5th Cir. 1989) (finding a motion to intervene was timely filed even though discovery was complete and the

15

litigation was over a year old because no legally significant proceedings had taken place) with Reeves, 754 F.2d at 970-71 (finding a motion to intervene untimely when it came nearly three years after the Movants should have known of their interest in the case and emphasizing that the Movants had "procrastinated and delayed in asserting their interests"). See also Georgia v. U.S. Army Corps of Eng'rs, 302 F.3d 1242, 1259-60 (11th Cir. 2002) ("We do not believe that a delay of six months in itself constitutes untimeliness."); Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir. 1989) (finding a motion to intervene timely in part because it "was filed only seven months after [the plaintiff] filed his original complaint"); Office Depot, 2010 WL 431886, at *2 (finding a motion to intervene timely where it was filed "approximately seven months after the filing of the Complaint, a time period deemed timely by other courts in this Circuit").

For the second and third factors, the Court must consider the degree of prejudice both to the existing parties and to the Movants. Beyond its consideration within the timeliness inquiry, prejudice is itself an independent element that the Court must consider. For the reasons described in more detail below, the Court finds that the original parties would not face significant prejudice should the Court allow intervention. This is particularly true in light of the potential for multiple

declaratory judgment actions if the Movants are not permitted to intervene. Moreover, the Court finds that the Movants' interests "could be prejudiced if not allowed to intervene because an adverse finding in the declaratory judgment action would potentially expand [their] liability[.]" See Lancer, 2010 WL 2867836, at *4. To that end, Hartford's policy expressly states that the coverage it owes for a non-owned auto is in excess to any other established coverage, such as that potentially owed by Ohio Security. (Doc. 28, Ex. 1 at 8.)

The final factor also weighs in favor of allowing intervention. Given the substantial similarity of issues, the Court does not find any unusual circumstances that would dictate denying intervention at this time. Thus, applying the four-part test articulated in Reeves, the Court finds that the present motions to intervene were timely filed.


2. **Common Question of Law or Fact**

These actions certainly involve common questions of law and fact. Here, both Plaintiff and the Movants seek declaration from this Court that their respective insurance policies do not cover the April 29, 2013 car accident. Moreover, the claims asserted in the declaratory judgment complaint and the proposed intervention complaints each allege that Newsome was not an insured at the time of the accident and that he breached

misrepresentation clauses in the contracts. Thus, the Court would be required to analyze strikingly similar policy provisions under the same legal standards. Finally, the Movants' claims do not just share common questions of fact; they share identical questions of fact. First, whether Newsome was an insured under either policy will require investigation into the purpose of the Georgia trip and Newsome's employment with Kodiak and Rapid Prep. As to the misrepresentation claim, both Plaintiff and the Movants assert that Newsome intentionally misrepresented material facts during a recorded statement to Hartford. In addressing the coverage disputes then, the Court will necessarily be looking at the same set of facts as they pertain to the same individual.

Given the substantial similarly of the legal issues raised and the underlying factual circumstances, the Movants clearly meet the second prong of the permissive intervention test. See Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Elec. Arts, Inc., et al., No. 11-04897, 2011 WL 6329224, at *2-3 (N.D. Cal. Dec. 14, 2011) (allowing four insurance companies to intervene in another insurer's declaratory judgment action in part because the Movants sought the same declaratory relief as the original plaintiffs, their policies and exclusions were identical, and the claims shared common questions of law and fact).

### 3. Delay or Prejudice

Having determined that the Movants' claims and those of Ohio Security share common questions of both law and fact and that the motions were timely made, the Court must still consider any undue delay or prejudice to the original parties. The Court finds that the existing parties will not face undue delay or prejudice.

The Court reaches this conclusion for five reasons. First, the Plaintiff in this matter, Ohio Security, has not opposed the present motions to intervene. Second, although the Grovensteins provided substantial argument regarding delay and prejudice, they have since settled all claims arising out of the accident, rendering their arguments moot.[11] Third, the other Defendants have failed to make any reference to prejudice suffered. Instead, Newsome, Kodiak, and Hertz focus almost exclusively on Hartford's and Great American's interest in the litigation — or what they perceive to be a lack thereof. Defendant Gaynor Newsome, the remaining injured party in the accident, has yet to file any response in this matter. Fourth, there is currently no pending litigation that could be delayed by intervention, as the Grovensteins have settled all of their claims. Finally, the current declaratory judgment litigation would not be

---

[11]    More specifically, the Grovensteins alleged prejudice based on the severity of their injuries and their advancing age. Quite obviously, these concerns were unique to the Grovensteins and do not apply to the remaining Defendants.

19

substantially delayed or prejudiced by allowing intervention. On January 6, 2015, the United States Magistrate Judge granted an unopposed extension of discovery, setting the close of discovery for March 23, 2015. (Doc. 59.)

Accordingly, the Court finds that allowing Great American and Hartford to intervene in this declaratory judgment action would not prejudice the existing parties but rather serves the interests of justice and judicial economy. See Lancer, 2010 WL 2867836, at *3 ("There is the added likelihood that Amerisure may also seek declaratory judgment to ascertain its legal rights and obligations under the insurance policy . . . . Allowing [intervention now], therefore, will make the overall litigation proceed more efficiently because the Court will have the opportunity to resolve these related insurance contract disputes together.").

### III. CONCLUSION

This Court will adhere to the Eleventh Circuit's preference of resolving related actions concurrently and grant Hartford's and Great American's motions to intervene. See Fed. Sav. & Loan Ins. Corp. v. Falls Case Special Taxing Dist., 983 F.2d 211, 216 (11th Cir. 1993) ("Any doubt concerning the propriety of allowing intervention should be resolved in favor of the proposed intervenors because it allows the court to resolve all

20

related disputes in a single action."). The Court finds that the Movants have each met the standards of Rule 24(b). Therefore, Hartford's and Great American's Motions to Intervene (Docs. 28, 48) are **GRANTED.** The Court also finds that a hearing is unnecessary, and the motion for a hearing is, therefore, **DENIED** (Doc. 40).

ORDER ENTERED at Augusta, Georgia, this _27th_ day of March, 2015.

HONORABLE J. RANDAL HALL
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF GEORGIA